J-E02001-23

2023 PA Super 271

| | | |
|---|---|---|
| ERIE INSURANCE EXCHANGE A/S/O BATES COLLISION, INC. JAMES MYERS, ANITA MORGAN, LOSSIE AUTO SERVICE, AND BENEDICTINE SISTERS OF ERIE, INC. | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| | : | No. 1482 WDA 2021 |
| v. | : : : | |
| UNITED SERVICES AUTOMOBILE ASSOCIATION | : : : : : | |
| v. | : : : : | |
| BATES COLLISION, INC., | : | |

Appeal from the Judgment Entered November 12, 2021
In the Court of Common Pleas of Erie County Civil Division at No(s):  No.
12888-18

BEFORE:  PANELLA, P.J., OLSON, J., DUBOW, J., KUNSELMAN, J., NICHOLS, J., MURRAY, J., McLAUGHLIN, J., KING, J., and McCAFFERY, J.

DISSENTING OPINION BY OLSON, J.:          **FILED: December 21, 2023**

I respectfully dissent from the learned Majority's determination in this matter and would affirm the trial court's order, which granted the motion for summary judgment filed by Appellee, United Services Automobile Association and dismissed the complaint alleging one claim for promissory estoppel filed by Erie Insurance Exchange a/s/o Bates Collision, Inc., James Myers, Anita Morgan, Lossie Auto Service, and Benedictine Sisters of Erie, Inc. (Appellant).

The Majority opines that, in granting summary judgment for Appellee, "the trial court erred in converting Appellant's promissory estoppel claim to one of negligent spoliation and dismissing the [c]omplaint on the grounds that Pennsylvania does not recognize a cause of action for spoliation of evidence". Majority Opinion at 8-9. Accordingly, the Majority concludes that the trial court erred in relying on *Pyeritz v. Commonwealth*, 32 A.3d 687 (Pa. 2011) in which our Supreme Court held that Pennsylvania law does not recognize a cause of action for negligent spoliation of evidence. Majority Opinion at 8. I respectfully disagree.

In its seminal decision in *Pyeritz*, our Supreme Court considered the question of whether Pennsylvania recognizes a cause of action against a third party not otherwise liable to the plaintiff for damages caused by the third party's negligent spoliation of evidence and held that "Pennsylvania law does not recognize a cause of action for negligent spoliation of evidence." *Pyeritz* 32 A.3d at 689, 691, 695. That case, like this action, involved a request to preserve evidence, disposal of the evidence after a representation that the evidence would be retained, and a claim for damages for the loss of recovery in a tort case that depended on the evidence that was destroyed.

In *Pyeritz*, the plaintiffs were the estate and family of a decedent who had fallen to his death from a hunting tree stand when the belt that lashed him to the tree stand broke. *Id.* at 689. Following decedent's death, the Pennsylvania State Police took possession of the pieces of the tree stand belt and less than a month later, an attorney for the plaintiffs sent the trooper in

charge of the investigation a letter stating that the attorney might want the trooper to retain the tree stand belt "[b]ecause of the extreme need to see that there is no spoliation of this evidence." *Id.* at 689-690. The trooper advised the plaintiffs' counsel that the State Police would have to retain the pieces of the belt until a coroner's jury determination of the cause and manner of death. *Id.* at 690. While the belt pieces were in the State Police's possession prior to the coroner's jury proceeding, plaintiff's counsel and a representative of a tree stand belt manufacturer took photographs of the belt pieces. *Id.* Less than a month after the coroner's jury determination that decedent's death was accidental, the plaintiffs' attorney asked the trooper to keep the pieces of the belt in the evidence room at the State Police barracks and the trooper agreed to the request. *Id.* The barracks, however, were later relocated to a new building and the trooper who had agreed to retain the pieces of the belt was assigned to a different barracks. *Id.* One month after the barracks were relocated, the trooper to whom the case was reassigned destroyed the pieces of the belt because the investigation had been completed. *Id.*

The ***Pyeritz*** plaintiffs brought a product liability action against two tree stand belt manufacturers, which settled for $200,000, and brought a negligence action against the State Police for failing to preserve the belt, seeking as damages the loss of a greater award or settlement that the plaintiffs contended that they could have obtained if the belt pieces had not been destroyed. *Id.* at 690-91. The trial court granted summary judgment

in favor of the Commonwealth, the Commonwealth Court affirmed, and the Supreme Court granted allowance of appeal on the issue of "[w]hether Pennsylvania recognizes, and if so whether Petitioners have alleged, a cause of action for negligent spoliation of evidence." *Id.* at 691.

The Supreme Court rejected this cause of action on the ground that a gratuitous agreement to a request to indefinitely retain evidence is not a sufficient basis to impose a legal duty and on the ground that recognition of the cause of action was against public policy because there is no way of knowing whether the evidence, if it been preserved, would support or negate the claim for which the damages are sought and the damages in such an action are therefore speculative. *Id.* at 693. With respect to the latter ground for rejecting a spoliation cause of action, the High Court reasoned:

> Although it may have been reasonably foreseeable to the troopers that the loss of the evidence might harm Appellants in their quest for damages in a civil lawsuit against the belt's manufacturer, we hold that as a matter of public policy, this is not a harm against which Appellees should be responsible to protect. **The primary reason is that the tort would allow the imposition of liability where, due to the absence of the evidence, it is impossible to say whether the underlying litigation would have been successful**. It could very well be true in this case, for example, that if the belt had not been destroyed, it would have undermined Appellants' suit against the manufacturers and they would not have realized even the $200,000 settlement they now have in hand. Of course, in some cases, one party may have already finished testing the evidence by the time it is destroyed, or as here, photographs or other representations of the evidence may still exist. However, depictions are an inadequate substitute for the evidence itself, as other parties cannot inspect and test the evidence independently, which deprives them of the raw material they

- 4 -

> need to mount a potentially successful claim or defense. **If we were to recognize the tort, the inability of the parties to assess meaningfully the impact of the missing evidence on the underlying litigation would result in potential liability based on speculation**.

*Id.* at 693-94 (emphasis added).

Although the Supreme Court in *Pyeritz* discussed a tort cause of action and analyzed the elements of negligence, it held that **no** cause of action for negligent spoliation (as opposed to intentional spoliation) exists. The Court did not hold that no **tort** action for such spoliation (as opposed to a non-tort cause of action) exists. Nothing in the *Pyeritz* opinion suggests that mere changing of the label on the claim to promissory estoppel would alter the result. To the contrary, the speculative nature of the damages that the Court held required rejection of the cause of action is the same regardless of the theory of liability. Moreover, the Court considered the existence of a gratuitous agreement relied on by the plaintiff in rejecting the cause of action and specifically rejected this Court's language in *Elias v. Lancaster General Hospital*, 710 A.2d 65, 68 (Pa. Super. 1998) that a special relationship, such as an agreement or voluntary assumption of a duty to preserve the evidence, could support liability for negligent spoliation. *Pyeritz*, 32 A.3d at 693-694. In addition, the Supreme Court rejected the *Pyeritz* plaintiffs' alternative claim that the State Police were liable for spoliation of the evidence on a theory of breach of an implied contract for bailment, regardless of whether such a bailment was shown, on the ground that the damages sought were for

negligent spoliation of evidence. *Id.* at 691 n.2; *see also id.* at 695 (Eakin, J., concurring).

The factors on which the Supreme Court relied in rejecting a spoliation cause of action are equally present in Appellant's promissory estoppel cause of action in this case. The basis of Appellant's claim, as in *Pyeritz*, is a gratuitous, indefinite commitment to preserve an item of evidentiary value for the benefit of the requesting party. Appellant's claim is for the same type of damages, loss of recovery in a lawsuit in which the spoliated item was critical evidence, and has the identical speculative nature that caused the Supreme Court to reject the spoliation cause of action in *Pyeritz* – there is no way to tell whether further examination of the BMW vehicle at issue would support or refute the claim of manufacturing defect. Indeed, Appellant brought no action against BMW and Appellant conceded to the trial court that it could not show that the fire was caused by a manufacturing defect or by any condition of the BMW vehicle for which it could have recovered damages. N.T. Summary Judgment Argument at 9, 29-31, 41. This case, like *Pyeritz*, also involves negligent spoliation. The loss of the evidence was the result of a failure by Appellee to adequately communicate to Insurance Auto Auction (IAA), the party that disposed of the BMW vehicle, that it needed to hold the BMW vehicle, not an intentional destruction or disposal of the BMW vehicle by Appellee.

Although no Pennsylvania case has specifically addressed whether *Pyeritz* bars or permits a non-tort claim for damages caused by negligent

spoliation of evidence, Pennsylvania federal cases have characterized **Pyeritz** as broadly holding that no cause of action for damages for negligent spoliation exists under Pennsylvania law without limiting this statement to tort liability. **Schwartz v. Taylor**, 2021 WL 949481 at *3 (E.D.Pa. C.A. No. 17-3799 March 11, 2021); **Marinkovic v. Battaglia**, 2019 WL 4600207 at **13-14 (W.D.Pa. Cases Nos. 1:14-cv-49, 2:18-cv-388 September 23, 2019); **Turturro v. United States**, 43 F. Supp. 3d 434, 459-60 (E.D. Pa. 2014), *aff'd*, 629 Fed. Appx. 313 (3d Cir. 2015).

Appellant argues that this Court should follow a California decision, **Cooper v. State Farm Mutual Automobile Insurance Co.**, 99 Cal.Rptr.3d 870 (Cal. App. 2009), that allowed a promissory estoppel cause of action for spoliation, that **Pyeritz** is distinguishable, and that public policy considerations require recognition of its promissory estoppel cause of action. None of these arguments has merit.

In **Cooper**, the California court held that the plaintiff injured in an automobile accident that he contended was caused by a defective tire could recover damages from his insurer on a promissory estoppel theory where the insurer disposed of the tire despite representations that it would preserve the tire. **Cooper**, 99 Cal.Rptr.3d at 873, 882-892. **Cooper**, however, not only is not based on Pennsylvania law, but its reasoning is not consistent with **Pyeritz** and it involved a situation where the damages were not as speculative as here. In **Cooper**, the court allowed the promissory estoppel cause of action for spoliation based on the fact that the insurer assumed a duty and had a special

relationship with the plaintiff as a result of its promises to preserve the tire. *Id.* at 882-85, 892. *Pyeritz* specifically rejected both assumed duty by gratuitous promises to retain evidence and a special relationship between the parties as bases for liability for spoliation. *Pyeritz*, 32 A.3d at 693-694. In addition, unlike this case, the speculative nature of damages that is the basis for rejecting spoliation suits was substantially reduced in *Cooper*, as there was expert opinion in *Cooper* that there was a manufacturing defect in the tire, not the mere possibility that a defect would be found if further examination had occurred. *See Cooper*, 99 Cal.Rptr.3d at 886-887.

Appellant argues that *Pyeritz* is distinguishable because the claim in that case was against the government; *i.e.* the Pennsylvania State Police, and would impose burdens outside the government's function. While *Pyeritz* did involve a government defendant and the Court mentioned that the retaining of evidence for a private civil suit was outside the government function, the Court did not limit its rejection of the cause of action to government entities. Rather, the Court rejected the cause of action without regard to the type of defendant and discussed the burden on non-government parties as a reason for rejecting the spoliation cause of action, stating:

> To the extent recognition of the tort would encourage the preservation of evidence, that benefit is outweighed by the financial burden the tort would impose. If it were recognized, businesses and institutions would be forced to preserve evidence, at considerable expense, for a myriad of possible claims that might never be brought.

*Pyeritz*, 32 A.3d at 694.

- 8 -

Appellant further relies on the alleged public policy that practices in the insurance industry required Appellee to retain the BMW vehicle until the investigation or litigation is complete and that failure to recognize a cause of action will create unnecessary additional litigation and expense. Nothing in the insurance industry practices argued by Appellant, which concern which party routinely holds and preserves evidence, however, negates the key public policy rationale of *Pyeritz* that the damages caused by loss of evidence are too speculative to permit a cause of action for spoliation of evidence that was not intentional. Moreover, denial of a cause of action does not require burdensome litigation to preserve evidence. Other steps to ensure that evidence is in fact preserved, such as payment of storage costs by the party that wishes to retain the evidence, express agreements as to how long evidence is held, and express agreements giving the party that wishes to retain the evidence authority to control its storage and disposal, could achieve protection of evidence without litigation.

Further – and setting aside my belief that *Pyeritz* bars Appellant's claim – I disagree with the Majority's conclusion that a genuine issue of material fact exists regarding Appellant's promissory estoppel claim. As our Supreme Court has explained:

> Where there is no enforceable agreement between the parties because the agreement is not supported by consideration, the doctrine of promissory estoppel is invoked to avoid injustice by making enforceable a promise made by one party to the other when the promisee relies on the promise and therefore changes his position to his own

detriment. In order to maintain an action in promissory estoppel, the aggrieved party must show that 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise. As promissory estoppel is invoked in order to avoid injustice, it permits an equitable remedy to a contract dispute.

*Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000) (citations omitted).

Here, Appellant has not demonstrated a genuine issue of material fact regarding the element that "injustice can be avoided only by enforcing the promise." *See id.*

In its complaint, Appellant speculates that, if Appellee had preserved the BMW, Appellant would have prevailed in "its claim against the manufacturer or the owner of the vehicle or anyone involved in maintaining the vehicle" – and that Appellant would have received $1,624,217.15, the amount paid by Appellant to its insureds as a result of the damage caused by the fire. *See* Complaint, 11/9/18, at ¶ 21 and "Wherefore" Clause. As noted above, however, Appellant conceded to the trial court that it could not show that the fire was caused by a manufacturing defect or by any condition of the BMW vehicle for which it could have recovered damages. N.T. Summary Judgment Argument at 9, 29-31, 41. Further, since the BMW was not preserved, there is now no way to determine whether Appellant could have prevailed in any potential claim "against the manufacturer or the owner of the vehicle or anyone involved in maintaining the vehicle." Complaint, 11/9/18,

at ¶ 21. In other words, Appellee's promise to Appellant could have very well been worth $0.00.

Thus, with respect to the promissory estoppel claim Appellant pleaded in its complaint – where it expressly sought to recover, from Appellee, the monetary value of a winning claim against "the manufacturer or the owner of the vehicle or anyone involved in maintaining the vehicle" – Appellant cannot establish that "injustice can be avoided only by enforcing the promise," as there is simply no evidence that Appellee's promise caused Appellant any monetary harm or was worth anything.

In conclusion, because our Supreme Court clearly held in *Pyeritz* that Pennsylvania does not recognize a cause of action to recover damages caused by negligent spoliation of evidence and Appellant's promissory estoppel claim against Appellee is an action to recover damages for negligent spoliation of evidence based on the same kind of a gratuitous agreement to indefinitely preserve evidence for the Appellant's benefit and speculative damages that the Supreme Court held did not permit a cause of action, I conclude that the trial court properly held that Appellant, as a matter of law, had no cause of action against Appellee. I would affirm the trial court's order granting summary judgment in favor of Appellee and against Appellant and, thus, respectfully dissent from the learned Majority's determination in this matter.

Judge Kunselman joins this dissenting opinion.

- 11 -